CARDINAL REALTY INVESTORS, LLC *v.*
RENE BERNASCONI
(SC 18095)

Rogers, C. J., and Katz, Vertefeuille, Zarella and Schaller, Js.

Argued March 18—officially released May 27, 2008

*David A. Pels*, with whom, on the brief, was *Gregory L. Bass*, for the appellant (defendant).

*John T. Forrest*, for the appellee (plaintiff).

*Opinion*

ROGERS, C. J. The defendant, Rene Bernasconi, appeals[1] from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, Cardinal Realty Investors, LLC, in its summary process action brought pursuant to General Statutes § 47a-15.[2] The defendant claims that there was insufficient evidence to support the trial court's finding that the defendant's conduct constituted a serious nuisance under the statute. We agree, and, accordingly, we reverse the judgment of the trial court.

The trial court found the following facts. The plaintiff owns a rooming house containing nine units at 44 Connecticut Boulevard in East Hartford. The defendant was a tenant there when the plaintiff purchased the property. Shortly after the plaintiff purchased the property, an employee of the plaintiff observed the inside of the defendant's room, which measured approximately twelve feet by ten feet. The room was so cluttered with trash, boxes, bags, chairs, food containers and personal household items that the furniture and floor were barely visible. There were three large refrigerators in the room.

Thereafter, the plaintiff and the defendant entered into an oral lease agreement whereby the defendant agreed to pay rent of $460 monthly for the use and

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 47a-15 provides in relevant part: "Prior to the commencement of a summary process action, except in the case in which the landlord elects to proceed . . . on conduct by the tenant which constitutes a serious nuisance . . . the landlord shall deliver a written notice to the tenant specifying the acts or omissions constituting the breach and that the rental agreement shall terminate upon a date not less than fifteen days after receipt of the notice. . . . For the purposes of this section, 'serious nuisance' means . . . (C) conduct which presents an immediate and serious danger to the safety of other tenants or the landlord . . . . "

occupancy of the premises for the term of one month. The plaintiff was concerned that the condition of the defendant's room would attract rodents and vermin and that the refrigerators would overload the electrical system and cause a fire. It asked the defendant several times to clean his room. The defendant failed to do so.

Before the one month lease expired, the plaintiff caused a notice to quit to be served on the defendant. When the defendant failed to vacate the premises, the plaintiff brought this action pursuant to § 47a-15, alleging that the conditions in the defendant's room were a serious nuisance because they posed a fire hazard.[3] Several weeks later, the plaintiff entered the defendant's room without the defendant's permission, because of its ongoing concerns regarding the condition of the room. The room was still full of trash, boxes and other items, piled waist high in some places, and all three refrigerators were running. There also was a stench in the room.

On the basis of this and other evidence about the condition of the room, the trial court found that "a reasonable inference can be drawn . . . that the condition of the room has presented, and still presents, a fire hazard." It further found that "[t]he defendant's conduct has been more than just a nuisance. It has caused, and

---

[3] The plaintiff filed a three count complaint alleging that the lease had terminated by lapse of time (first count), that the conditions in the room constituted a serious nuisance under § 47a-15 (second count) and that the defendant was keeping motor vehicles on the property that constituted a serious nuisance (third count). The trial court rendered judgment for the defendant on the first and third counts. Those rulings are not at issue in this appeal.

Because the plaintiff alleged that the conditions in the defendant's room constituted a serious nuisance, the provisions of § 47a-15 requiring a landlord to deliver a written notice to the tenant specifying the acts or omissions constituting the breach of the rental agreement and stating that the agreement would terminate not less than fifteen days after receipt of the notice did not apply.

continues to cause, an immediate and serious danger to the safety of the other tenants." Accordingly, the court concluded that the plaintiff had proved, by a fair preponderance of the evidence, all of the elements of its serious nuisance claim and rendered judgment for the plaintiff for immediate possession of the premises.

This appeal followed, in which the defendant claims that there was insufficient evidence to support the trial court's conclusion that the conditions in his room posed a fire hazard. The plaintiff contends, to the contrary, that the evidence that the defendant's room was extremely cluttered and contained three refrigerators was sufficient, in and of itself, to allow a person of ordinary knowledge and experience reasonably to conclude that the conditions created an immediate and serious risk of fire. Thus, the plaintiff contends that there was no need for expert testimony on this question. See *Allison* v. *Manetta*, 284 Conn. 389, 405, 933 A.2d 1197 (2007) (expert testimony not required for matter within ordinary knowledge and experience of fact finder). We agree with the defendant.

"[A]s a preliminary matter, we set forth the standard of review for the [defendant's] claims of evidentiary insufficiency. [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . We also must determine whether those facts correctly found are, as a matter of law, sufficient to support the judgment. . . . Although we give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses . . . we will not uphold a factual determination if we are left with the definite and firm conviction that a mistake has been made." (Citations omitted; inter-

nal quotation marks omitted.) *Rocque* v. *Farricielli,* 269 Conn. 187, 212, 848 A.2d 1206 (2004).

Section 47a-15 provides in relevant part: "For the purposes of this section, 'serious nuisance' means . . . (C) conduct which presents an immediate and serious danger to the safety of other tenants or the landlord . . . ." Accordingly, in order to prevail on its claim under this portion of the statute, that the conditions in the defendant's room posed a fire hazard, the plaintiff was required to establish by a preponderance of the evidence that the conditions created a risk of fire that was both "immediate and serious . . . ."

We conclude that the evidence that the defendant's room was extremely cluttered and contained three running refrigerators was insufficient to support a reasonable inference that the conditions created an immediate and serious risk of fire. The plaintiff presented no evidence that the heat normally generated by the refrigerators would be sufficient to ignite the clutter and no evidence that the refrigerators could overload the available electrical capacity. Moreover, to the extent that the trial court concluded that the clutter created a fire hazard in and of itself, we conclude that the evidence did not support a finding that such a hazard was so immediate and serious that it constituted a serious nuisance under § 47a-15. There was no evidence that the clutter contained particularly flammable items, and any risk that the clutter could fuel a fire that started elsewhere and hinder escape was not an immediate and serious one.

Finally, even if the plaintiff is correct that *expert* testimony was not required, and that a person of ordinary knowledge and experience could testify on the basis of personal observation that the refrigerators were capable of generating sufficient heat to ignite a fire or

that the available electrical capacity was not sufficient to run the three refrigerators safely, those facts were neither undisputed nor so obvious that *no* evidence in support of them was necessary.[4] Although it is the fact finder's "right to draw logical deductions and make reasonable inferences from the facts proven"; (internal quotation marks omitted) *Riccio* v. *Harbour Village Condominium Assn., Inc.*, 281 Conn. 160, 163, 914 A.2d 529 (2007); we do not believe that it is within the ordinary knowledge of jurors and judges that running three refrigerators in a cluttered room, in and of itself, creates an immediate and serious fire hazard. Accordingly, in the absence of evidence to that effect, any such inference would be "mere conjecture and speculation." (Internal quotation marks omitted.) Id. Indeed, the trial court expressly recognized the need for evidence on the question of whether the refrigerators created an immediate and serious fire hazard when it stated that expert testimony on that issue probably would be required.[5]

The judgment is reversed as to the second count of the complaint only and the case is remanded to the trial court with direction to render judgment for the defendant on that count. The judgment is affirmed in all other respects.

In this opinion the other justices concurred.

---

[4] We might reach a different conclusion if the evidence established that the defendant had been keeping cans of gasoline, paint, cleaning fluid or other especially flammable items in his room.

[5] At trial, the plaintiff attempted to introduce testimony by Francis Cosgrove, an employee of the plaintiff, that the refrigerators were a fire hazard. The defendant objected to the testimony on the ground that Cosgrove was not a fire safety or electrical expert. The trial court sustained the objection, stating that whether the refrigerators created a fire hazard "is probably going to be something that needs to be testified to by an expert because . . . this is a serious nuisance case."